MARY DELANEY

*v.*

DANIEL DELANEY *et al.*

*Opinion filed October 24, 1898.*

1. BENEFIT SOCIETIES—*beneficiary has no vested right in contract of insurance.* One appointed as beneficiary in an insurance certificate has no vested right in the contract of insurance from the mere fact of such appointment, and, the contract being between the society and the member, the latter may change the beneficiary at any time in accordance with the statute, the charter and by-laws of the society and the certificate itself.

2. SAME—*member presumed to have power to change beneficiary.* In the absence of any provision of the statute, by-laws or charter of the society or the certificate of insurance, expressly authorizing or prohibiting a change of beneficiary by the member, the latter has a vested right to make such change, from the character and purpose of the society itself.

3. SAME—*society may waive provision for surrender of certificate.* A provision in the by-laws of a benefit society, or in the certificate itself, requiring the surrender of the certificate when a member changes his beneficiary, may be waived by the society and a new certificate be issued naming a new beneficiary, upon the member's affidavit that the original certificate is lost or destroyed, or in any other manner satisfactory to the society and the member.

4. SAME—*member may name creditor as his beneficiary.* The general Incorporation act, as amended in 1874, (Rev. Stat. 1874, p. 291,) authorizing a member of a benefit society organized as a corporation not for pecuniary profit to name as beneficiary his legatees or devisees without restriction, except that the appointment be by will, is broader in policy than those statutes which limit the benefits to the member's relatives or dependents, and under the former the member may name his creditor or any other person as beneficiary in the first instance, whether related to him or not.

5. APPEALS AND ERRORS—*chancellor's findings of fact not lightly disturbed.* The chancellor's findings of fact on conflicting oral testimony will not be disturbed on appeal, unless clearly and manifestly against the preponderance of the evidence.

*Delaney* v. *Delaney,* 70 Ill. App. 130, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a bill of interpleader, brought by the High Court Independent Order of Foresters, against Mary Delaney and Daniel Delaney. The bill was filed for the purpose of compelling the appellant, Mary Delaney, and the appellee, Daniel Delaney, to interplead, and settle their respective claims to $1000.00, admitted by the order to be due from it upon an endowment certificate, payable upon the death of Martin Delaney, a member of the said order, who died October 25, 1893. The appellant was the wife of Martin Delaney, and the appellee was his second cousin. Answers were filed to the bill by Mary Delaney and Daniel Delaney; and replications were filed to the answers. The $1000.00 was paid into court, and the High Court Independent Order of Foresters was dismissed with

its costs and attorney's fees, and the cause was retained for the purpose of deciding to whom the money should be paid. The circuit court entered a decree in favor of the appellee, Daniel Delaney, from which decree the appellant, Mary Delaney, prosecuted her appeal to the Appellate Court, where the judgment of the circuit court was affirmed. The present appeal is prosecuted from such judgment of affirmance.

The facts, so far as it is necessary to state them in order to understand the questions involved, are as follows: The complainant below, the High Court Independent Order of Foresters is a fraternal and benevolent organization, organized under the laws of Illinois for the purpose of "giving to its members or the members of such subordinate courts as it may institute, life insurance, to be paid upon the death of the member obtaining the same to such person or persons as may be designated by the endowment certificate issued by" it. The complainant corporation was organized under the act concerning corporations of April 18, 1872, as amended by the act of March 28, 1874, concerning "corporations not for pecuniary profit." (1 Starr & Curt. Stat.—2d ed.—pp. 988, 1020, 1021; Public Laws of Ill. 1871-72, p. 96; id. 1873-74, p. 74).

In April, 1881, Martin Delaney made application for membership in said order, which application contained the following words: "I direct that in case of my decease all benefit to which I may be entitled from the Independent Order of Foresters of the State of Illinois be paid to Mary Delaney, related to me as my wife, subject to such future disposal of the benefit to my widow, orphans, heirs or devisees, as I may hereafter direct in compliance with the laws of the order."

The charter contains the following provision, to-wit: "Second—That the object for which it is formed is to give charitable and moral aid to its members and to the widows, orphans and devisees of deceased members of said order and to establish and charter subordinate

courts." The by-laws contain similar provisions to that contained in the charter above quoted.

On November 14, 1882, the order issued to Martin Delaney, as a member of Court Fidelity No. 37, Independent Order of Foresters of Illinois, a certificate duly signed, attested, sealed, and recorded, and accepted in writing by said member, wherein, after reciting that it is to be issued upon condition that the statements made in the application for membership and the statements certified to the medical examiner are made a part of the contract, and upon condition that the said member complies with the laws, rules and regulations governing the said order, or that may thereafter be enacted by the high court, the following words are used: "These conditions being complied with, the said High Court of the Independent Order of Foresters of Illinois hereby promises and binds itself to pay to Mrs. Mary Delaney, his wife, $1000.00, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate, provided that said member is in good standing in this order at the time of his death, and provided also that this certificate shall not have been surrendered by said member and another certificate issued at his request in accordance with the laws of this order."

January 6, 1887, Martin Delaney made and presented to the order an affidavit, in which he swore that said benefit certificate No. 1087, above set forth, had been either "lost, destroyed or stolen," and requested a new certificate in place thereof to be issued to the Mercy Hospital of Chicago. Thereupon, an endowment certificate No. 12,725 was issued in accordance with said request.

On July 24, 1888, Martin Delaney surrendered and delivered said certificate No. 12,725 to the said order, with the following endorsement on the back thereof: "I herewith surrender and return to the High Court of the Independent Order of Foresters of Illinois the within benefit certificate No. 12,725, and direct that a new one be issued

to be payable to Daniel Delaney, my cousin;" which endorsement was signed by Martin Delaney. Accordingly, a new certificate No. 18,770 was issued to Martin Delaney, as such member, wherein, after reciting the same conditions as were recited in No. 1087, the high court of the order promises and binds itself to pay to Daniel Delaney, cousin of said member, $1000.00 upon satisfactory evidence of the death of said member, and upon surrender of the certificate, provided said member is in good standing at the time of his death and provided also that "this certificate shall not have been surrendered by said member and a new certificate issued at his request in accordance with the laws of this order."

Martin Delaney was, at the time of his death on October 23, 1893, a member in good standing of said order, and proofs and notification of his death were presented, as required by the constitution and by-laws then in force. He left surviving him his widow, Mary Delaney, who had a daughter and three granddaughters. After a hearing had upon the pleadings and testimony, the circuit court entered a decree, in which it found, among other things, that Martin Delaney did not give said certificate to appellant, or make any contract with her that she should receive the insurance money mentioned therein, or that he would not change the beneficiary mentioned therein; that said Martin in 1886 became an object of charity, dependent for his support upon his friends and relatives; that Daniel Delaney was a cousin of said Martin, and, at his request, on January 6, 1887, made an agreement for him with the Mercy Hospital of Chicago, by which said hospital agreed to board and clothe said Martin during the balance of his life, and said Martin agreed to surrender said endowment certificate No. 1087, and have a new one issued; that said Daniel agreed to pay the dues and assessments, that might thereafter be payable by reason of the membership of said Martin in said order, so long as said Martin lived; that said Martin delivered en-

dowment certificate No. 12,725 to said hospital, which thereupon commenced to board, lodge and clothe him, and continued to do so until about May 1, 1887; that said Daniel paid all dues and assessments for said Martin in said order from January 6, 1887, until said Martin's death; that on or about May 1, 1887, said hospital ceased to take care of said Martin, and surrendered said certificate upon the payment by said Daniel of what was then due to it for board and lodging; that said Daniel, at the request of Martin, made an agreement on the latter's behalf, with the Little Sisters of the Poor, who conducted a home for the aged in the city of Chicago, by which said Sisters agreed to board, lodge and clothe said Martin during the balance of his life; and he agreed to surrender said certificate No. 12,725, and have a new one issued payable to said Daniel Delaney; that said Daniel Delaney agreed to pay said Little Sisters, upon the death of said Martin, out of the insurance to be collected, for the board, etc., furnished by them to said Martin; that the said certificate No. 18,770 was thereupon issued payable to said Daniel, and delivered to him and he paid $60.00 due to said Mercy Hospital, and has paid all dues thereafter to the said order; that said Sisters took care of said Martin until his death, and that said Daniel paid his funeral expenses; that said Mary Delaney knew of the issuance of certificate No. 12,725, and of the surrender of the latter certificate in July, 1888, and of the issuance of said certificate No. 18,770, and knew of the payments by Daniel Delaney of the dues and assessments to the order, and also knew of the furnishing by the said hospital and said Sisters of support to said Martin; that appellant never made known to said Daniel, or to said hospital, or to said Sisters, or to said high court, the fact, that she had possession of said endowment certificate No. 1087, nor did she claim the same to be in full force; that said Mary has been guilty of *laches* in the assertion of any right she may have had under certificate No. 1087; that the issue

of said certificate No. 12,725, and the issue of said certificate No. 18,770 were the free and voluntary acts of said Martin Delaney, and not done at the request of Daniel Delaney.

JAMES E. WHITE, (WARD B. SAWYER, of counsel,) for appellant:

The contract in the case at bar is like a contract in ordinary life insurance, and is to be construed strictly against the insurer.  Niblack on Ben. Soc. and Acc. Ins. (2d ed.) sec. 143;  Bliss on Life Ins. (2d ed.) sec. 385.

It cannot truly be said that the interests of a beneficiary may be brought to an end at any time at the will of the member.  It requires more than the will and the intention of the member to accomplish this change.  Niblack on Ben. Soc. and Acc. Ins. (2d ed.) sec. 218, and cases cited;  *Wendt* v. *Grand Lodge*, 72 Iowa, 682;  3 Am. & Eng. Ency. of Law, (2d ed.) 994, 995;  *Hotel Men's Benev. Ass.* v. *Brown*, 33 Fed. Rep. 11;  *Rollins* v. *McHatton*, 16 Col. 203.

We do not claim that a mere beneficiary in a benevolent society has anything more than an expectancy, but we contend that this expectancy can be changed into a vested interest by contract or agreement, and that in this case appellant's interest became vested by reason of her agreement with the insured and the various considerations paid for the assignment of the policy to her.  *Jory* v. *Supreme Council*, 105 Cal. 28;  *Helfrich* v. *Insurance Co.* 8 Misc. Rep. (N. Y. Com. Pl.) 320;  3 Am. & Eng. Ency. of Law, (2d ed.) 993;  *Smith* v. *National Ben. Society*, 123 N. Y. 85.

Where, under the contract, the member may assign his certificate, a parol assignment accompanied by delivery will vest in the assignee an equitable right to the fund.  Niblack on Ben. Soc. and Acc. Ins. (2d ed.) sec. 167.

FRANCIS T. COLBY, for appellees:

A contract of insurance in a mutual benefit society is with the member, and not with the beneficiary.  *Martin*

v. *Stubbings*, 126 Ill. 388; *Benton* v. *Brotherhood*, 146 id. 570; *Supreme Council* v. *Franke*, 34 Ill. App. 651; 137 Ill. 118; *Coyne* v. *Jones*, 51 Ill. App. 17.

Where the contract of mutual benefit insurance does not take away the power to change the beneficiary the member has the right. *Benton* v. *Brotherhood*, 146 Ill. 570; *Johnson* v. *VanEpps*, 110 id. 551; *Highland* v. *Highland*, 109 id. 366; *Carpenter* v. *Knapp*, 70 N. W. Rep. 764; Niblack on Benefit Societies, (1894 ed.) 407, sec. 212.

The delivery of the certificate to the beneficiary named therein has no effect whatever upon the right of the member to change the designation as provided in the contract of insurance,—and this though the possessor of the certificate has paid the assessments. *Masonic Ass.* v. *Bunch*, 109 Mo. 560; *Hirschl* v. *Clark*, 81 Iowa, 200; *Brown* v. *Grand Lodge*, 80 id. 287; *Fisk* v. *Aid Union*, 11 Atl. Rep. 84; *Isgrigg* v. *Schooley*, 125 Ind. 94; *Carpenter* v. *Knapp*, 70 N.W. Rep. 764.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The first endowment certificate No. 1087, which was issued to the deceased, Martin Delaney, by the High Court Independent Order of Foresters, was made payable to the appellant, Mary Delaney. She obtained and retained the possession of said certificate, and produced it after the death of Martin Delaney. Her contention is, that there was no surrender of the original endowment certificate No. 1087 issued to her, and that the circuit court erred in so holding. The main question in the case, therefore, is whether the order had the right to issue a new certificate in the place of the one issued to the appellant under the circumstances developed by the evidence in this record.

It seems to be well settled by the weight of authority, both in this State and in other States, that the beneficiary in an endowment certificate, issued by a mutual

benefit society, has no vested rights in the contract of mutual benefit insurance. The right of the beneficiary, named in the certificate of membership, to the benefit to accrue upon the death of the member is not such a right, as can be enforced until the death occurs. The contract of insurance is between the society and the member, to whom the certificate is issued, and not between the society and the beneficiary named in the certificate. If the beneficiary has no vested interest in the contract of insurance, it follows that during the life of the member to whom the certificate is issued, the latter may change the beneficiary, subject to such restrictions as are imposed by the statute, the charter, the by-laws, or the endowment certificate itself. Such right of the assured to change the beneficiary does not exist, as a general thing, in the case of an ordinary life insurance policy. The decisions in the text books are not altogether in accord as to the reasons, which exist, for the distinction in this regard between certificates issued by a mutual benefit society and ordinary life insurance policies. But whether there are any good reasons for the distinction or not, it is too well established by authority to be here controverted. (*Martin* v. *Stubbings*, 126 Ill. 387; *Catholic Knights of America* v. *Franke*, 137 id. 118; *Benton* v. *Brotherhood of Railroad Brakemen*, 146 id. 570; *Voigt* v. *Kersten*, 164 id. 314; Niblack on Benefit Societies and Accident Ins.—2d ed.— sec. 212, and cases in notes; *Carpenter* v. *Knapp*, 101 Iowa, 712, (70 N. W. Rep. 764;) *Isgrigg, Exr.* v. *Schooley*, 125 Ind. 94).

Inasmuch as the member, to whom the certificate is issued, has the power of changing the beneficiary, and appointing a new one at any time during his life, except so far as he is restricted by the organic law of the society, or by his contract with the society, it becomes necessary to inquire whether any restrictions upon the power of appointment existed in the present case.

We have been referred to no provision in the statute, under which the appellee, the High Court Independent

Order of Foresters, was organized, or in its charter, or
by-laws, which expressly authorizes a change in the bene-
ficiary.   It is well settled that, where the contract of
mutual benefit insurance does not take away the power
to change the beneficiary, the member has that right.
(Niblack, id. sec. 212).   Because of the right, which the
member has to change the beneficiary during his life-
time, the only right, which the beneficiary has until the
death of the member, is a mere expectancy.   (Niblack,
id. sec. 212; *Martin* v. *Stubbings, supra*).   It will always be
presumed, that the member has full right to change the
beneficiary, or to control the benefit during his lifetime,
until the contrary is made to appear.   Where there is no
provision in the statute, or in the charter or by-laws, or
in the certificate of insurance itself, which expressly pro-
vides for a change of the beneficiary, or which prohibits
such a change, the power to change the beneficiary is
vested in the member during his lifetime by reason of the
character and purposes of the benefit association itself.
(*Carpenter* v. *Knapp, supra*).

The original certificate, No. 1087, issued to Mary De-
laney, contains a promise on the part of the association,
that it will pay the $1000.00 to her upon satisfactory evi-
dence of the death of Martin Delaney, and "upon the sur-
render of this certificate provided that such member is
in good standing in the order at the time of his death,
and provided also that this certificate shall not have been
surrendered by such member, and another certificate is-
sued at his request in accordance with the laws of the
order." The certificate itself upon its face recognizes the
right of Martin Delaney, the member, to have another
certificate issued at his request in accordance with the
laws of the order.   The power of appointment, or the
power to change the beneficiary, is thus embodied in the
terms of the contract between the society and the mem-
ber in the present case.   But it is contended on behalf
of the appellant, that the right of the member, Martin

Delaney, to change the beneficiary and the right of the association to issue a new certificate depended upon the surrender of the first certificate to the association. It is said, that, here, there was no surrender of certificate No. 1087 issued to Mrs. Delaney, but that she had such certificate in her possession. It is, therefore, argued that, inasmuch as there was no surrender of the original certificate, the association had no power to issue a new certificate, and that, thus, the contract of insurance itself upon its face contained a restriction upon the power of appointment, to-wit, the surrender of the existing certificate.

It would seem to follow, as a necessary corollary from the doctrine, that the certificate is a contract between the society and the member, and not between the member and the beneficiary, that the society and the member can modify or change their contract in any way satisfactory to themselves. An expectancy, which is the only interest held by the beneficiary prior to the death of the member, is not property, and, therefore, a change of the contract made by the society and the member together could not injure or affect in any way a property interest of the beneficiary. It is true, that, by the terms of the certificate, the change.is to be made upon a surrender of the certificate; and that, when the mode of changing the beneficiary is specified in the contract, it must be substantially followed. (Niblack, id. sec. 218). But the parties to the contract may agree between themselves upon a change of the mode of appointing a new beneficiary. The provision, that a new certificate may be issued upon the. surrender of the old certificate, is a provision which is made for the benefit of the association, and may, therefore, be waived by the association. It has been held, that the material question is, whether the change of the beneficiary is made by the member with the consent of the society, and that, if it is so made, it is immaterial whether or not the requirements of the by-laws upon

that subject have been complied with or not. (Niblack, id. sec. 215). "A member and the society may during the life of the member waive these requirements, and may agree upon a new beneficiary of the contract in any manner satisfactory to both parties." (Niblack, id. sec. 222). "Although the rule is settled that change of beneficiary must be made in the manner prescribed by the laws of the society with some exceptions it is also now equally well settled that the society may waive compliance with the required formalities." (1 Bacon on Benefit Societies and Life Ins. sec. 308; *Splawn* v. *Chew,* 60 Tex. 532; *Martin* v. *Stubbins, supra; National Mutual Aid Society* v. *Lupold,* 101 Pa. St. 111).

In the case at bar, the evidence shows, that the association had been in the habit of granting a new certificate at the request of the member and therein changing the beneficiary without a surrender of the old certificate, provided the member should make an affidavit that the original certificate was lost or destroyed or stolen. Here, Martin Delaney made an affidavit that certificate No. 1087 was lost, destroyed or stolen. It turned out, after his death, that the certificate was in the possession of his wife, Mary Delaney, at the time when he made such affidavit. There is some conflict in the testimony as to the circumstances in regard to the disappearance of the certificate. The testimony on the part of the appellant tends to show, that Martin Delaney gave her the certificate, and requested her to keep it. Other testimony is to the effect, that she abandoned him in the fall of 1886, leaving his home, and that he was obliged to obtain support through others; and that, upon his demand, she refused to give up the certificate. It is not clear, however, from other portions of the evidence, that he knew where the certificate was, or whether she had destroyed it, or still kept it. The circuit court found in favor of the contention of the appellees upon this subject, and we are not disposed to disturb the finding of the circuit court upon

such a question of fact.    Where the chancellor sees and hears the witnesses, his findings upon mere questions of fact, when the testimony is conflicting, will not be disturbed on appeal, unless they are clearly and manifestly against the preponderance of the evidence.    (*Burgett* v. *Osborne*, 172 Ill. 227).    Such is not the case here.

It is well settled that, even if the certificate, issued by a mutual benefit society, is given to the beneficiary therein, such beneficiary holds it subject to the right of the member, to whom it was issued, to change the beneficiary.    The beneficiary always takes the certificate, subject to such right of change in the member during his lifetime.    If Mrs. Delaney purposely withheld this certificate when it was demanded of her, inasmuch as the law presumes her knowledge of the right of her husband to change the beneficiary, she was guilty of a wrong towards her husband, and cannot now take advantage of her own wrong.

Not only was there an affidavit as to the loss of the original certificate No. 1087, but, by agreement between Martin Delaney and the association, a new certificate, No. 12,725, was issued to the Mercy Hospital.    The purpose of taking up the old certificate, and issuing this new one, was to obtain from the Mercy Hospital for Martin Delaney board, lodging and clothing; and Mrs. Delaney knew of the issuance of the new certificate, and for what purpose it was issued.    Subsequently, when the Mercy Hospital declined further to support Martin Delaney, certificate No. 12,725 was taken up, and a new certificate No. 18,770 was issued to Daniel Delaney to enable him to obtain support for Martin Delaney from the Little Sisters of the Poor upon the conditions and in the manner set forth in the statement preceding this opinion.    There is conflict in the testimony as to the cause of the separation between Martin Delaney and his wife in 1886, she claiming that such separation was due to his fault, but other testimony in the case shows that it was not his fault.

Whatever may have been the cause of such separation, it is certain that, during the last six years of his life, he was supported at the Mercy Hospital, and at the institution, known as the Little Sisters of the Poor, through the efforts of Daniel Delaney, and by means of the insurance money, which was expected to be paid upon said certificate when the time of his death should arrive.

It thus appears, that the original contract between the parties, evidenced by certificate No. 1087, was abandoned by both parties to it, to-wit, the member and the society, before the death of Martin Delaney. "It is difficult to see what rights remain to the beneficiary under it. * * * The member and the society are the parties to a contract of mutual benefit insurance, and they may, during the life of the member, agree to a change of the beneficiary in any manner which is satisfactory to both parties. When they have agreed to a change of the beneficiary, a new contract is in force, and, to the extent of the modification made, the old contract is abandoned and superseded. * * * When a society has actually changed the beneficiary at the request of the member, all questions as to whether the manner and mode of changing the beneficiaries provided in the contract have been followed, are concluded and absolutely disposed of." (Niblack, id. sec. 219; *Titsworth* v. *Titsworth*, 40 Kan. 571; *Barton* v. *Association*, 63 N. H. 535; *Gladding* v. *Gladding*, 8 N. Y. Supp. 880; *Lamont* v. *Hotel Men's Mutual Ben. Ass.* 30 Fed. Rep. 817; *Simcoke* v. *Grand Lodge*, 84 Iowa, 383; *Bowman* v. *Moore*, 87 Cal. 306).

It has been held in a number of cases that the mere withholding of a certificate by a beneficiary does not defeat the right of a member to change the beneficiary.

In *Isgrigg* v. *Schooley*, *supra*, Schooley was the holder of a beneficiary certificate in a mutual benefit society; the by-laws of the order provided that when a member decided to change a beneficiary named in a certificate he must, among other things, surrender the old certificate; -

the beneficiary originally named had been the wife of the deceased; she abandoned him, however, and refused to live with him and, without his consent, took the certificate away with her and, upon a demand for its return, she stated that it was lost; the deceased, being desirous of changing the beneficiary, complied with all the requirements of the by-laws in respect thereto save the surrender of the certificate, assigning its alleged loss as the reason for his failure to do so; and it was there held, that the right of the assured to make a change in the beneficiary existed as soon as the certificate was issued; that it was his duty, while it was within his power to do so, to follow the mode provided in the by-laws in making the change, but that, whenever a state of circumstances existed which deprived him of the power to literally comply with the conditions of the by-laws, he was relieved from a literal compliance therewith, but was not divested of the right to make a change; and it was further held, that the acts of the decedent constituted an equitable change of beneficiary, and that a person, in whose favor the deceased desired a new certificate to be issued, was entitled to the fund; and that, as he had done all in his power toward complying with the by-laws in making the change and had been prevented by his wife from formal compliance, she could not after his death set up her own wrongful act to prevent a recovery for the benefit of the new beneficiary. (*Grand Lodge* v. *Child*, 70 Mich. 163; *Hirschl* v. *Clark*, 81 Iowa, 200; *Schmidt* v. *Iowa Knights of Pythias Ins. Ass.* 82 id. 304; *Carpenter* v. *Knapp, supra;* 1 Bacon, id. secs. 308, 310; *Masonic Ben. Ass.* v. *Bunch*, 109 Mo. 560).

It is contended, however, that Daniel Delaney does not come within the class of persons, for whose benefit the charter of the association in this case authorizes benefit certificates to be issued, and that, therefore, he was not a legal beneficiary, and is not entitled to the fund in dispute. The act of March 28, 1874, under which

the present association was organized, provides as follows: "Associations and societies, which are intended to benefit widows, orphans, heirs and devisees of deceased members thereof, and where no annual dues and premiums are required, and where the member shall receive no money as provided or otherwise, shall not be deemed insurance companies." The same class as those mentioned in the statute are also mentioned in the charter and by-laws of the association. It is said, that Daniel Delaney is neither an heir, nor devisee of the deceased Martin Delaney. If this were an original question, it would demand serious consideration.

But this court has held that the statute, by empowering a member to name as his beneficiary his legatee or devisee without restriction, proceeds upon a policy much broader than do those statutes, which limit the benefits to accrue upon the death of the member to his relatives, or those in some way dependent upon him; that, under the name of legatee or devisee, a member is given the power to appoint, as his beneficiary, any person, whether related to him, or not related to him at all; that he may in the selection of his beneficiary be governed by circumstances of affection or duty, or he may yield to the dictates of mere caprice, subject only to the limitation that the appointment be made by will; and that the legislature, having thus enlarged the category of those capable of being selected as beneficiaries so as to include all persons whom the member may select as his legatees or devisees, there is no rule of public policy which would be violated by the adoption of a different mode of selecting a beneficiary; that no substantial rights of any party are better secured or promoted by one mode of appointment than another; that the mode of selection is a mere matter of form and does not go to the substance of the right to select beneficiaries, and that the assignment of a certificate by a member in his lifetime to a creditor, as security for a debt, was, under the contract, valid and

binding upon both the beneficiary and the society. (*Martin* v. *Stubbings, supra*). So, also, in *Bloomington Mutual Benefit Ass.* v. *Blue*, 120 Ill. 121, it was held that, as a member might under the charter in that case devise the benefits of his policy to a stranger, so he might in the first instance take out a policy payable to a stranger. In the latter case, the charter was construed as not only authorizing a member to name a devisee other than one of his heirs, but we went further and decided that, as he might so devise it to a stranger, so he might take out the certificate in the first instance payable to one, who had no insurable interest in his life. (*Massachusetts Ben. Ass.* v. *Bunch, supra; Niblack*, id. secs. 166, 173, 212-214; *Lamont* v. *Hotel Men's Mutual Ben. Ass. supra*).

In view of what has been said, it is immaterial whether Daniel Delaney was or was not related to Martin Delaney. The rights of appellee, Daniel Delaney, are to be determined by the language of the act of March 28, 1874, and of the constitution and by-laws of the society passed in pursuance thereof. The proof showed, and the circuit court found, that Martin Delaney was indebted to Daniel Delaney at the time of his death. Inasmuch as Daniel Delaney was a creditor of Martin Delaney, the doctrine of the case of *Martin* v. *Stubbings, supra*, was precisely applicable. There was not here an assignment of the certificate to Daniel Delaney, but the appointment of him as beneficiary in a new certificate had the same effect as though there had been such assignment. (Niblack, id. sec. 186, note 3). The rights of the appellee, Daniel Delaney, are not impaired by the act of June 22, 1893, in relation to fraternal benefit societies. (2 Starr & Cur. Ann. Stat.—2d ed.—p. 2278; *Voigt* v. *Kersten, supra*).

The judgment of the Appellate Court, affirming the decree of the circuit court, is affirmed.

*Judgment affirmed.*