## BROTHERHOOD OF RAILROAD TRAINMEN v. BENSON et al.

District Court, D. Minnesota, Fifth Division.

Dec. 11, 1930.

Baldwin, Baldwin, Holmes & Mayall, of Duluth, Minn., for defendant Lenora Benson.

McClearn & Gilbertson, of Duluth, Minn., for defendant Chester Benson.

SANBORN, District Judge.

The facts stated in the stipulation constitute the findings of fact in this case. Briefly stated, the essential facts are these:

Elmer C. Benson was, at the time of his death, the holder of a beneficiary certificate of the plaintiff issued to him on December 29, 1916. The certificate recited that he was a member of Spokane Lodge No. 307, and was "entitled to all the rights, privileges, and benefits of membership, and to participate in the beneficiary department Class B of said Brotherhood to the amount set forth in the Constitution thereof," which in the event of his death should be paid to Lena Benson, his wife, if living.

On September 8, 1925, H. R. Peery, the secretary and treasurer of Trainmen's Lodge 307 of plaintiff, Spokane, Wash., wrote this letter to A. E. King, general secretary and treasurer of the plaintiff's Grand Lodge at Cleveland, Ohio:

"Sept. 8, 1925

"Mr. A. E. King, Cleveland, Ohio.

"Dear Sir and Brother, Elmer C. Benson this lodge now at Edgecliffe Sanitorium this City states that his Ben. Cert. is made payable to his wife from whom he has applied for a divorce and who has left him some time ago and he does not know where she is now and he wishes to make a transfer of his Policy to his Brother Alfred C. Benson a Minor and living with his Mother at Gary Minn.

"I will visit Bro. Benson Friday 11th and have arranged for him to make an affidavit that his Ben. Cert. is not in his possession and that he does not know where is and wishes to make transfer as stated.

"If this is legal and proper and you can accept the request for transfer thus and will advise us to that effect, we will forward affidavit. If not will you please forward necessary blank for this use.

"Brother Benson's condition is such that we will have to work fast if transfer is made as he wishes.

"Yours Fraternally,   H. R. Peery,
"S. T. 307."

On the 11th day of September, 1925, Elmer C. Benson made the following affidavit:

"I, Elmer C. Benson, member Spokane Lodge 307 Brotherhood Railroad Trainmen owner Beneficiary Certificate "B" Class number unknown, same being payable at death to my wife Leonora Benson, and said Certificate not being at this time in my possession, and knowing not of the whereabouts of same, wish to make application for a new Certificate and also make transfer in my Beneficiary to my Brother Chester Benson, residing at Gary Minnesota."

The affidavit and letter were mailed to the plaintiff on the dates they bear and received

in due course of the mails and prior to the death of Elmer C. Benson. Upon their receipt, they were retained, but no transfer was made upon the books of the Grand Lodge, and no new certificate was issued. A printed form of application used by the lodge in cases where a new certificate was desired by the insured, with change of beneficiary, was mailed to Elmer C. Benson for execution. This application was partially filled out, and was in the following words:

"Application for New Certificate Where Original Is In Possession of Another Party

"State of ———, County of ———, ss.

"E. C. Benson, being first duly sworn upon oath deposes and says that he is a member in good standing at Spokane Lodge No. 307, Brotherhood of Railroad Trainmen, located at Spokane, Wash., that as a member of said Brotherhood on, to-wit: Dec. 29th, 1916, there was issued to him by the Grand Lodge of said Brotherhood, beneficiary certificate, No. B 56095, Class B, with benefits payable to Lena his wife; that said certificate was given to his wife for safe keeping; that he now wishes to transfer said certificate and name a new and different beneficiary but his said wife refuses to relinquish possession of the said certificate and he is therefore unable to make said transfer on said certificate as required by the Constitution and General Rules; that he hereby requests that the said certificate be cancelled and requests the Grand Lodge to issue to him a new certificate, in Class B, in the place and stead of the certificate above mentioned, and hereby agrees, that upon the issuance of such new certificate the said original certificate shall be thereby cancelled and the said Grand Lodge be released and discharged from any and all liability on account of the same; that he further desires and requests that such new certificate shall be written payable to ——————— his ——— and hereby reaffirms all the answers to all the questions in the original application for said certificate No. B 56095 Class B, and agrees that said answers constitute a part of this application, and if any of them are false, incomplete or misleading, that any certificate issued on this application shall be void from its issuance.

"———————.

"Subscribed and sworn to before me this ——— day of ———, 192—.

"[Seal] ———."

Elmer C. Benson died on September 18, 1925, and before the form of application mailed him by the Grand Lodge had reached him. Both Lenora Benson and Chester Benson made claims to the proceeds of the certificate, and the plaintiff thereupon filed its bill of interpleader and deposited the amount due in court for the benefit of whoever might be found to be entitled to it.

The constitution of the plaintiff, among other things, provided:

"Sec. 60. In case a beneficiary certificate has been lost or destroyed, or the member to whom it has been issued cannot obtain possession thereof, a new beneficiary certificate may be issued by the General Secretary and Treasurer on presentation of an affidavit from the member fully setting forth the loss or destruction of the certificate issued to him, or his inability to obtain possession of the same, and releasing and discharging the Brotherhood from any and all liability thereunder."

"Sec. 62. Any member desiring to transfer his beneficiary certificate shall fill out the printed transfer on the certificate and sign his name thereto, and send the same to the General Secretary and Treasurer, through the secretary of a lodge of the Brotherhood. All transfers of beneficiary certificates shall be made upon the books of the Grand Lodge under the direction of the General Secretary and Treasurer, and any and all transfers made in any other manner shall be null and void. It shall be the duty of the General Secretary and Treasurer, immediately upon its receipt, to certify to such transfer in the form provided therefor in the certificate."

The claim of Lenora Benson is that no transfer or change of beneficiary had been made in accordance with the constitution of the plaintiff, and the claim of Chester Benson is that a valid transfer or change of beneficiary had been made in his favor. He also claims that, even if it be found that what was done by Elmer C. Benson prior to his death did not have the effect of constituting him the beneficiary or transferee of this insurance, no one could complain except the plaintiff, and that, by filing its bill of interpleader, it waived the requirements of its constitution.

There are certain rules of law with respect to mutual benefit insurance which are well settled:

I. The beneficiary named in the certificate acquires no vested interest in the contract of insurance during the lifetime of the insured, and has a mere expectancy, which may be defeated at any time by the act of the insured member. Supreme Council of Royal Arcanum v. Behrend, 247 U. S. 394, 38

S. Ct. 522, 62 L. Ed. 1182, 1 A. L. R. 966; Schoenau v. Grand Lodge, 85 Minn. 349, 88 N. W. 999; Supreme Conclave v. Cappella (C. C.) 41 F. 1.

■ II. The rights and liabilities of all parties to the contract become fixed upon the death of the insured member. Hughes v. Modern Woodmen, 124 Minn. 458, 145 N. W. 387; Shuman v. Ancient Order, 110 Iowa, 642, 82 N. W. 331; Modern Woodmen v. Little, 114 Iowa, 109, 86 N. W. 216; Fink v. Fink, 171 N. Y. 616, 64 N. E. 506.

■ III. The insured member has the absolute right to change the beneficiary named in his certificate, subject to any restrictions contained in his contract, which, of course, includes the by-laws, constitution, and certificate. Supreme Council of Royal Arcanum v. Behrend, supra; Delaney v. Delaney, 175 Ill. 187, 51 N. E. 961; Schoenau v. Grand Lodge, supra; see note to Union Central Life Ins. Co. v. Buxer, 49 L. R. A. 737.

■ IV. In changing the beneficiary, the insured is required to do it in the manner pointed out by his contract, and a material deviation from the prescribed course will invalidate the transfer. This rule is subject to the following exceptions, which are thus stated in Vanasek v. Western Bohemian Fraternal Ass'n, 122 Minn. 273, 279, 142 N. W. 333, 336, 49 L. R. A. (N. S.) 141, Ann. Cas. 1914D, 1123:

■ "(1) Where the society has waived strict compliance with its own rules, and in pursuance of a request of the insured has issued to him a new certificate in which the beneficiary is changed, the original beneficiary cannot complain that the course indicated by the regulations was not pursued.

■ "(2) If it is beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. As an example of this exception a case is cited where the insured had lost his certificate and was thus unable to comply with the requirement that it be surrendered.

■ "(3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued."

See, also, Supreme Conclave v. Cappella, supra.

■ An unexecuted intent to substitute a new beneficiary is not equivalent to an actual substitution, even though the certificate is delivered to the intended beneficiary. Vanasek v. Western Bohemian Fraternal Ass'n, supra, and cases cited.

■ The main difficulty which the courts have had is not in ascertaining the rules of law applicable, but in applying them to the facts of a particular case. It must be kept in mind that, while there should be great liberality in making effective an intended change of beneficiary, where an insured and an insurer have contracted for a particular method for bringing about a change or transfer, the court has no power to make a new contract for them, and cannot waive material requirements which the insurer has itself not waived prior to the death of the insured.

In this case it is apparent, from what has been said, that Mrs. Benson, the original beneficiary, had no vested rights in the certificate in question; that the deceased had the right to change his beneficiary at any time during his life by a substantial compliance with the rules of the plaintiff; that no act of the plaintiff after the death of the insured can affect the rights of the beneficiary in the original certificate.

■ Section 62 of the constitution of the order evidently refers to the method by which transfers of original certificates of membership in the order can be made. Section 60 relates to the method of procuring a new beneficiary certificate when the original is not in the possession of the member. This section, it is true, says that "a new beneficiary certificate may be issued," but, since the member has a right, unless prohibited, to change the beneficiary, and since, in the absence of the original, he never could indorse the transfer upon it, and since the printed form sent by the secretary and treasurer of the Grand Lodge clearly recognized the right of the insured to a new certificate naming a new beneficiary, it is clear that the issuance of the new certificate was more than a matter of discretion. The deceased could not have complied with section 62. He did not have the original certificate, and it was out of his possession. He was unable to indorse any transfer upon it or to send it to the secretary and treasurer of the Grand Lodge, and therefore he could not require that official to record the transfer, as provided by section 62. The letter of the secretary of the local lodge shows that the deceased told him of his wish to transfer his insur-

ance to his brother. He states that he will have the insured make an affidavit, and directs that, if this is not enough, the necessary blank to accomplish the insured's purpose be sent. The affidavit of the insured is clearly an attempt by him and the local secretary, not to comply with section 62, but with section 60. The insured states that the certificate payable to his wife is out of his possession; that he wishes a new certificate, and makes transfer of his beneficiary to his brother, Chester Benson. It is safe to say that, had the new certificate been issued by the secretary-treasurer of the Grand Lodge, payable to Chester Benson, as requested, his rights as beneficiary could never have been successfully contested. See Supreme Council of Royal Arcanum v. Behrend, supra. Had the local secretary used the printed form for the issuance of a new certificate with change of beneficiary, instead of the affidavit of September 11th, Benson would have complied with section 60, and, even if the Grand Lodge had neglected to issue the new certificate prior to his death, the new beneficiary would, in equity, have been entitled to the proceeds of the insurance. Hughes v. Modern Woodmen, 124 Minn. 459, 145 N. W. 387. In that case, the court said (page 463 of 124 Minn., 145 N. W. 387, 389):

"The cases already cited show that if the precedent conditions had been so far performed that the association ought to have completed the change, or with proper diligence could have done so, that the courts will consider the change as having been effected."

The printed form forwarded to the insured by the secretary and treasurer of the Grand Lodge, except in detail, differs in only one particular, required by the constitution, from the affidavit furnished. The affidavit contains no waiver by the insured of his rights under his original certificate. If that be considered a matter of substance, it probably defeats the intention of Elmer Benson with respect to a change of his beneficiary, since it is something which could have been made a part of his affidavit of September 11th. If it is not a matter of substance, but a matter of form merely, it should not defeat his purpose.

I am unable to convince myself that the insured did not substantially comply with the requirements of the constitution with reference to obtaining a new certificate naming a new beneficiary. The original certificate was merely evidence of the rights of the member and the rights of his designated beneficiary to share in the benefit fund in case of his death. He was not requesting additional insurance, but simply new evidence of his old insurance, showing a change of beneficiary. The issuance by the plaintiff of a new certificate, as requested, would have wiped out all liability under the old certificate. See Supreme Council of Royal Arcanum v. Behrend, supra. In Supreme Conclave v. Cappella, supra, it is pointed out that the law does not require the impossible. It can be as truthfully said that it does not require that which is futile. The insured, on his deathbed, after having consulted with the secretary of his local lodge, endeavored to comply with the essential requirements of the constitution of the plaintiff so as to bring about the payment of his insurance to his brother upon his death. Upon the receipt of his affidavit, the plaintiff knew exactly what he wanted done. It was charged with the knowledge that, under the law, a compliance with his request would extinguish all rights under his original certificate. The execution of the blank sent to him could have been nothing more than a mere matter of form.

My conclusion is that Elmer Benson, under the circumstances, not only did all that could reasonably have been expected, but that he complied in every material respect with the requirements of the plaintiff's constitution, that the plaintiff should have issued the new certificate requested by him, naming his brother, Chester Benson, as beneficiary, and that equity will regard that as having been accomplished at the time of his death.

It is urged that, under the laws of the state of Washington, the certificate of membership or contract of insurance constituted community property, and that, for that reason, the deceased could not have changed the beneficiary. No case holding any such thing has been cited. The Supreme Court, in the case of Supreme Council of Royal Arcanum v. Behrend, supra, pointed out that even a beneficiary who pays the premium acquires no vested interest in the contract. Since the certificates of membership have no loan nor surrender value, and since no reserve is accumulated, it would seem unreasonable to hold that such contracts constitute community property simply because membership dues were paid out of the earnings of the husband.

A decree may be presented requiring the clerk of this court to pay over to the defendant Chester Benson the money paid into court by the plaintiff, less any deductions.