DOROTHY COONEY AND OTHERS v. MARGARET GREEN-WALT, SUBSTITUTED FOR EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, ORIGINAL DEFENDANT.[1]

January 11, 1952.

No. 35,540.

---

[1]Reported in 51 N. W. (2d) 285.

*K. J. Flakne* and *John Ott,* for appellants.
*Kelly, Mangan & Kelly,* for respondent.

MATSON, JUSTICE.

Plaintiffs appeal from an order denying their motion for a new trial.

Plaintiffs, surviving sisters of Harry Greenwalt, the insured herein, brought this action to have an annuity policy upon the life of the insured reformed by having themselves adjudicated as entitled to the proceeds of the policy on the ground that the insured, prior to his death, had by written assignment effected a change of beneficiary, or had thereby made a gift of the proceeds, in their

favor to the exclusion of his widow, who is the actual beneficiary designated in the policy.

Upon the commencement of the suit, the defendant insurer admitted full liability on the policy in the sum of $2,270.14; and this sum, pursuant to stipulation of the parties and order of the court, was deposited in escrow to abide the outcome of the action. The insurer was then dismissed from all further liability, and the widow of the insured was retained as the sole defendant.

Harry Greenwalt, the insured, for many years prior to his death on March 11, 1948, was employed by the insurer, the Equitable Life Assurance Society of the United States, in the solicitation and writing of insurance contracts in its behalf. In 1941, the insurer established a group annuity contract for its sales agents known as "Retirement Plan for Agents." Harry, from 1941 until the time of his death, was a member in good standing; and under the terms of the annuity contract—which was in the form of a booklet given to all members—he had the unrestricted right to change beneficiaries. Originally he designated his wife, Margaret Greenwalt, and his son, Scott, as beneficiaries. When his son died in 1947, he had the insurance company issue a rider whereby his wife was designated as the beneficiary if she survived him, otherwise his two grandchildren. On or about October 22, 1947, insured employed a lawyer to draft an instrument which, insofar as it is here pertinent, reads:

"For value received I hereby sell, assign and transfer to my sisters Anna G. Olson of Stillwater, Minn., and Dorothy Cooney of Princeton, Minnesota, as trustees all of my right, title and interest in and to my equity in an old age pension which I have established with The Equitable Life Assurance Society of the United States, * * *.

\* \* \* \* \*

"In the event that said beneficiary, Frances McRoberts, shall die before said trust is fully administered and the proceeds fully paid out then and in that event Virginia Greenwalt shall be substituted in the place of said Frances McRoberts."

Taking, as we must, the view of the evidence most favorable to the findings, it appears that insured executed the foregoing assignment in triplicate in the presence of his lawyer. The three copies immediately after their execution were delivered by the lawyer into the personal possession of insured, who retained exclusive possession of them as long as he lived and never at any time delivered them to the insurer or to any other known party. In fact, the assignment was not again seen until after the insured's death, when all three copies were found in a strongbox in decedent's office by the executor of his will. About May 11, 1948, a considerable time after the death of insured, the executor delivered the original of the triplicate instrument to the local office of the insurer. By way of negation of the allegations of plaintiffs' pleading, the court made a further finding—which is specifically sustained by the evidence though there is some conflict in testimony—that the decedent during his life never instructed his lawyer to deliver the assignment to the insurer and that failure to make a delivery thereof was not caused by any delay, inadvertence, and neglect of such lawyer. The court further determined that the execution of the assignment did not effect a change of beneficiary and that it did not operate to assign or transfer the insurance proceeds to plaintiffs.

Upon these findings, the trial court concluded as a matter of law that defendant, Margaret Greenwalt, widow of insured, was entitled to the proceeds of the policy, and ordered judgment accordingly. Plaintiffs' motion for amended findings or a new trial was denied, and from the order of denial plaintiffs appeal.

■ Plaintiffs' contention that the assignment operated as a change of beneficiary is without merit. The rule that an insurance company, under a so-called "old line" insurance policy, cannot refuse, after the death of the insured, to perform the ministerial act of endorsing a change of beneficiary on the policy where it appears that the insured, prior to his death, substantially complied with the policy's provision relative to a change of beneficiary and had taken reasonable steps to effectuate that change by arranging to have the notice of change of beneficiary forwarded to the insurance

company, *implicitly carries with it the elementary requirement that it must also appear that the insured clearly intended that a change of beneficiary should be made.*[2] The rule of substantial performance in determining whether a change of beneficiary has been accomplished is for the purpose of carrying the intent of the insured into effect and not for the purpose of supplying an intent that is missing. In the instant case, insured was an experienced insurance salesman who undoubtedly knew exactly what had to be done to effect a change of beneficiary. As hereinbefore noted, he had on a prior occasion, with respect to the same policy, gone through the necessary steps. The evidence clearly sustains the court's finding that he retained exclusive control of the written assignment and that he did not instruct his lawyer, or any other person, to forward the assignment to the company. In fact, it cannot be said that he took any steps to put the machinery in motion for transmitting the policy and the assignment—or any other instrument for a redesignation of beneficiary—to the insurer's home office. In other words, substantial compliance with the necessary steps is lacking. Furthermore, his conduct as an experienced insurance agent is wholly inconsistent with possession of an intent that the written assignment should serve as a redesignation of beneficiary. If he had so intended, undoubtedly as an experienced insurance agent, he would have taken the necessary steps to have a notice of change of beneficiary sent to the company's home office.

Did the written instrument, however, operate as a gift *inter vivos* of the insurance policy proceeds by assignment? The general rule is that a policy of insurance on the life of the donor may be made the subject of a gift in the same manner as any other chose in action; but in order for the gift to be effective all the essential elements of a valid gift must be present. Redden v. Prudential L. Ins. Co. 193 Minn. 228, 258 N. W. 300. The legal elements of a gift are (1) delivery, (2) intention to make a gift on the part of the donor, and (3) absolute disposition, or surrender of control

[2]See, Schoenau v. Grand Lodge, 85 Minn. 349, 88 N. W. 999, and actual holding of Boehne v. Guardian L. Ins. Co. 224 Minn. 57, 28 N. W. (2d) 54.

and dominion, by the donor of the thing which he intends to give to another. The Laura Baker School v. Pflaum, 225 Minn. 181, 30 N. W. (2d) 290; Owens v. Owens, 207 Minn. 489, 292 N. W. 89; see, Redden case, *supra*. If we assume that the insured actually intended to make a gift of the policy proceeds by assignment instead of by effecting the usual change of beneficiary, he failed as a *donor* to accomplish his purpose, in that he made no delivery of the assignment or the policy, but personally retained absolute dominion and control of them at all times.

Plaintiffs, for the first time on appeal, seek to bolster their case on the theory that the instrument executed by the insured was not an assignment but a declaration of trust. This theory was not submitted to the trial court and should therefore not have been raised on this appeal. The theory or theories upon which a case is tried below become the law of the case and must be adhered to on appeal. Edelstein v. D. M. & I. R. Ry. Co. 225 Minn. 508, 31 N. W. (2d) 465. The only exception to this rule—and it has no application here—is stated in Hart v. Bell, 222 Minn. 69, 23 N. W. (2d) 375, 24 N. W. (2d) 41. We observe, however, that the trust theory is of no aid to plaintiffs, in that insured (assuming that he did intend to create a trust) made no delivery to the trustee of the instrument declaring the trust or of the subject matter of the trust. At all times insured retained absolute control of the assignment and of the policy. If the owner of property intends to make an *inter vivos* gift of the property in trust, but the title does not pass to the intended third-party trustee for want of delivery of the subject matter or for want of delivery of the instrument of conveyance, no trust is created, and title to the property remains in the owner free of trust.[3] This rule is applicable to the gratuitous assignment in trust of rights under a contract. Restatement, Trusts, § 32, *comment d.*

---

[3]Eagles Bldg. & Loan Assn. v. Fiducia, 135 N. J. Eq. 7, 37 A. (2d) 116; Restatement, Trusts, § 32, *comment a;* 1 Scott, Trusts, § 32.2; 1A Bogert, Trusts and Trustees, § 147; 18 Minn. L. Rev. 569; 54 Am. Jur., Trusts, § 42.

The order of the trial court is affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.